IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SIGNATURE ENERGY LLC, <br> SIGNATURE ENERGY CARD SERVICES LLC, <br><br> Plaintiff, <br><br> v. <br><br> CORPORATE AIR LLC, <br><br> Defendant. | Civil Action No. 25-540 <br> Judge Nora Barry Fischer |

**MEMORANDUM OPINION**

I. INTRODUCTION

In this case, Plaintiffs Signature Energy LLC ("Signature") and Signature Energy Card Services LLC ("SECS") bring alternative claims of breach of contract and unjust enrichment/promissory estoppel against Defendant Corporate Air LLC based on its nonpayment of invoices for aviation fuel and default on its credit accounts held with Plaintiffs. (Docket No. 1). Presently before the Court is a Motion for Default Judgment, a declaration from counsel, and brief in support filed by Plaintiffs seeking a default in the amounts of unpaid invoices, contractual interest/late fees and attorney's fees and costs. (Docket Nos. 11; 12). After careful consideration and for the following reasons, Plaintiffs' Motion [12] will be granted, in part, and denied, in part.

II. BACKGROUND

*A. Factual Allegations*

Based on the uncontested allegations in Plaintiffs' Complaint, the Court finds the following. Plaintiff Signature is a successor entity to EPIC Aviation, LLC and is in the business of selling aviation fuel to customers. (Docket No. 1 at ¶¶ 1, 9, 12). Plaintiff SECS is a successor entity to EPIC Card Services, LLC and provides credit to certain aviation fuel customers enabling

1

them to use charge cards for fuel purchases. (*Id*. at ¶¶ 2, 10, 17). Defendant operates a customer cargo airline transportation business out of Allegheny County Airport in West Mifflin. (*Id*. at ¶¶ 5, 11).

For diversity purposes, both Plaintiffs trace their citizenship to the same ultimate parent company, Signature Aviation US holdings, Inc., which is a Delaware Corporation with its principal place of business in Florida. (*Id*. at ¶¶ 1-4). The sole member of Defendant is an individual, Mark Schreiner, who is a resident of Pennsylvania. (*Id*. at ¶ 5). As the Plaintiffs are citizens of Delaware and Florida and Defendant is a citizen of Pennsylvania, the parties are completely diverse. *See* 28 U.S.C. § 1332(a).

Plaintiffs and Defendant are parties to three separate agreements pursuant to which Defendant was able to purchase aviation fuel from Plaintiffs on credit and/or using the credit cards:

1) a Fuel Purchase Agreement entered into by Defendant and EPIC Aviation, LLC (now Plaintiff Signature) on April 1, 2010 and amended on October 1, 2013, Pl. Exs. 1, 2;

2) an EPIC Card account originally formed on April 2, 2010 between Defendant and EPIC Aviation, LLC (now Plaintiff Signature), Pl. Ex. 3; and,

3) a Signature Card account, originally formed on April 25, 2018 between Defendant and Epic Card Services, LLC (now Plaintiff SECS), Pl. Ex. 4.

(*See* Pl. Exs 1-6). All three agreements are: governed by Oregon law; require Defendant to timely pay costs incurred for aviation fuel purchases; authorize Plaintiffs to recover attorneys' fees and costs for enforcement actions; and, permit Plaintiffs to charge interest on late payments, including eighteen percent (18%) per year on the entire unpaid balance under the Fuel Purchase Agreement and twelve percent (12%) per year on delinquent credit accounts for the EPIC Card and Signature Card. (*Id*.). Each of the agreements also permitted the initial entities to assign them to the

successor entities which are Plaintiffs in this action. (*Id*.). The credit card agreements further enable the issuers to demand full and immediate payment of all outstanding amounts upon a default by the borrower. (Pl. Exs. 5, 6).

In Count I, Signature alleges that it has adhered to all of its obligations under the Fuel Purchase Agreement, as amended, but that Corporate Air LLC breached same by failing to pay funds owed for fuel purchased under the agreement. (Docket No. 1 at ¶¶ 26-32). Signature maintains that Corporate Air LLC was advised of the breach on January 31, 2025 and that it owes Signature $522,182.10 in principal and $46,601.87 in interest on this account as of the date of filing, April 22, 2025. (*Id*. at ¶¶ 28-29). Signature has attached a series of invoices to the Complaint seeking the same amount of principal and after computing the interest at 18% annually for each invoice, the Court has compiled the following chart:

| INVOICE DATE | DUE DATE | CUSTOMER PO # | INVOICE NO. | LOAD NUMBER | AMOUNT | ECF | Rate | | Days | Interest |
|---|---|---|---|---|---|---|---|---|---|---|
| 8/13/2024 | 9/27/2024 | | 573229 | 7838281 | 822711 | $26,210.19 | 1-8 AT 2 | 0.18 4/22/2025 | 206 | $2,662.67 |
| 8/19/2024 | 10/3/2024 | ETHAN | | 7839484 | 822875 | $26,195.91 | 1-8 AT 3 | 0.18 4/22/2025 | 200 | $2,583.71 |
| 8/19/2024 | 10/3/2024 | | 573230 | 7839486 | 823357 | $25,697.32 | 1-8 AT 4 | 0.18 4/22/2025 | 200 | $2,534.53 |
| 8/20/2024 | 10/4/2024 | | 573231 | 7840310 | 823896 | $25,668.29 | 1-8 AT 5 | 0.18 4/22/2025 | 199 | $2,519.01 |
| 8/20/2025 | 10/4/2024 | | 573231 | 7840311 | 823895 | $25,655.34 | 1-8 AT 6 | 0.18 4/22/2025 | 199 | $2,517.74 |
| 8/28/2024 | 10/12/2024 | | 573233 | 7842245 | 824862 | $25,969.01 | 1-8 AT 7 | 0.18 4/22/2025 | 191 | $2,446.07 |
| 8/28/2024 | 10/12/2024 | | 573233 | 7842247 | 824863 | $25,959.26 | 1-8 AT 8 | 0.18 4/22/2025 | 191 | $2,445.15 |
| 8/28/2024 | 10/12/2024 | | 573234 | 7842255 | 824983 | $25,991.85 | 1-8 AT 9 | 0.18 4/22/2025 | 191 | $2,448.22 |
| 8/29/2024 | 10/13/2024 | | 573234 | 7842486 | 824985 | $37,463.89 | 1-8 AT 10 | 0.18 4/22/2025 | 190 | $3,510.32 |
| 9/5/2024 | 10/20/2024 | | 573235 | 7844356 | 825866 | $25,349.50 | 1-8 AT 11 | 0.18 4/22/2025 | 183 | $2,287.71 |
| 9/10/2024 | 10/25/2024 | | 537237 | 7845504 | 826425 | $25,362.24 | 1-8 AT 12 | 0.18 4/22/2025 | 178 | $2,226.32 |
| 9/13/2024 | 10/28/2024 | | 573238 | 7846595 | 826781 | $25,406.87 | 1-8 AT 13 | 0.18 4/22/2025 | 175 | $2,192.65 |
| 9/13/2024 | 10/28/2024 | | 573239 | 7846711 | 827412 | $24,318.42 | 1-8 AT 14 | 0.18 4/22/2025 | 175 | $2,098.71 |
| 9/20/2024 | 11/4/2024 | | 573242 | 7848626 | 828429 | $23,802.23 | 1-8 AT 15 | 0.18 4/22/2025 | 168 | $1,972.00 |
| 9/20/2024 | 11/4/2024 | | 573421 | 7848630 | 827886 | $24,321.46 | 1-8 AT 16 | 0.18 4/22/2025 | 168 | $2,015.02 |
| 9/25/2024 | 11/9/2024 | ETHAN | | 7849652 | 828302 | $23,731.30 | 1-8 AT 17 | 0.18 4/22/2025 | 163 | $1,907.61 |
| 9/25/2024 | 11/9/2024 | | 573243 | 7849653 | 828873 | $23,849.05 | 1-8 AT 18 | 0.18 4/22/2025 | 163 | $1,917.07 |
| 9/30/2024 | 11/14/2024 | | 573245 | 7850902 | 829260 | $24,057.85 | 1-8 AT 19 | 0.18 4/22/2025 | 158 | $1,874.53 |
| 9/30/2024 | 11/14/2024 | | 573240 | 7850977 | 827660 | $33,102.14 | 1-8 AT 20 | 0.18 4/22/2025 | 158 | $2,579.25 |
| 10/1/2024 | 11/15/2024 | | 573246 | 7851393 | 829494 | $24,069.98 | 1-8 AT 21 | 0.18 4/22/2025 | 157 | $1,863.61 |
| OUTSTANDING AMOUNTS | | | | | | $522,182.10 | | | | |
| Interest | | | | | | | | | | $46,601.87 |
| TOTAL | | | | | | $568,783.97 | | | | |

(*See* Pl. Ex. 7). Beyond the principal and interest set forth above, Plaintiff also seeks post-judgment interest at the judgment rate, and an award of attorney fees and costs. (Docket No. 1 at 6). Signature seeks the same relief against Defendant under the alternative theories of unjust enrichment/promissory estoppel at Count III. (Docket No. 1 at ¶¶ 40-44).

In Count II, Plaintiff SECS alleges that it complied with all conditions of the credit card agreements for the Signature Card and Epic Card accounts and that Defendant defaulted on both by failing to pay balances owed to it, i.e., $230,872.39 on the EPIC Card, including finance charges, late fees and interest; and $64,838.11 on the Signature Card, including finance charges, late fees and interest. (Docket No. 1 at ¶¶ 33-39). Once again, SECS seeks the same relief in Count IV, asserting alternative theories of unjust enrichment/promissory estoppel. (*Id*. at ¶¶ 45-49).

SECS has attached a series of invoices to the Complaint for unpaid charges made on the two accounts and finance charges which were assessed during the relevant period. (Pl. Exs. 8; 9). As to the Signature Account, the Court has compiled the following chart from the attached invoices:

| OUTSTANDING SIGNATURE CARD - COUNT II | | | | | |
|---|---|---|---|---|---|
| PURCHASE DATE | STATEMENT DATE | CARD NO. | INVOICE # | AMOUNT | ECF |
| 9/9/2024 | 9/10/2024 | *0016 | 375319-15400724 | $3,264.34 | 1-10 AT 2 |
| 9/11/2024 | 9/12/2024 | *0016 | 381132-15404514 | $1,676.00 | 1-10 AT 3 |
| 9/14/2024 | 9/16/2024 | *0131 | 390119-15410201 | $1,620.23 | 1-10 AT 4 |
| 9/23/2024 | 9/24/2024 | *0016 | 414398-15431871 | $1,176.00 | 1-10 AT 5 |
| 9/23/2024 | 9/24/2024 | *0131 | 414521-15431452 | $2,433.17 | 1-10 AT 6 |
| 9/23/2024 | 9/24/2024 | *0016 | 415812-15431920 | $1,515.72 | 1-10 AT 7 |
| 9/23/2024 | 9/24/2024 | *0131 | 415834-15432318 | $1,942.00 | 1-10 AT 8 |
| 9/23/2024 | 9/24/2024 | *0131 | 416194-15431461 | $193.17 | 1-10 AT 9 |
| 9/26/2024 | 9/27/2024 | *0131 | 422590-15437219 | $3,533.17 | 1-10 AT 10 |
| 9/26/2024 | 9/27/2024 | *0016 | 423499-15437257 | $2,154.16 | 1-10 AT 11 |
| 9/29/2024 | 9/30/2024 | *0131 | 430582-15443258 | $6,697.76 | 1-10 AT 12 |
| 9/29/2024 | 9/30/2024 | *0131 | 431324-15443035 | $1,615.09 | 1-10 AT 13 |
| 10/1/2024 | 10/2/2024 | *0131 | 436289-15447584 | $1,958.73 | 1-10 AT 14 |
| 10/1/2024 | 10/2/2024 | *0131 | 437040-15447463 | $2,433.17 | 1-10 AT 15 |
| 10/4/2024 | 10/7/2024 | *0016 | 446880-15454796 | $843.80 | 1-10 AT 16 |
| 10/5/2024 | 10/7/2024 | *0016 | 449561-15458109 | $2,654.09 | 1-10 AT 17 |
| 10/5/2024 | 10/7/2024 | *0016 | 449997-15457964 | $1,515.72 | 1-10 AT 18 |
| 10/7/2024 | 10/8/2024 | *0016 | 454682-15461268 | $3,760.03 | 1-10 AT 19 |
| 10/14/2024 | 10/15/2024 | *0131 | 474431-15476948 | $4,149.71 | 1-10 AT 20 |
| 10/16/2024 | 10/17/2024 | *0131 | 481336-15479197 | $3,113.17 | 1-10 AT 21 |
| 10/17/2024 | 10/18/2024 | *0016 | 485105-15481553 | $2,197.55 | 1-10 AT 22 |
| TOTAL Outstanding | | | | $50,446.78 | |
| | | | | | |
| AUG 24 FINANCE CHARGE | 8/31/2024 | | FCHRG000000017709 | $179.53 | 1-10 AT 23 |
| SEPT 24 FINANCE CHARGE | 9/30/2024 | | FCHRG000000017770 | $671.87 | 1-10 AT 24 |
| OCT 24 FINANCE CHARGE | 10/31/2024 | | FCHRG000000017863 | $778.58 | 1-10 AT 25 |
| NOV 24 FINANCE CHARGE | 11/30/2024 | | FCHRG000000017921 | $765.10 | 1-10 AT 26 |
| DEC 24 FINANCE CHARGE | 12/31/2024 | | FCHRG000000017969 | $600.41 | 1-10 AT 27 |
| JAN 25 FINANCE CHARGE | 1/31/2025 | | FCHRG000000018011 | $600.41 | 1-10 AT 28 |
| | | | | | |
| Total Finance Charges | | | | $3,595.90 | |
| | | | | | |
| TOTAL | | | | $54,042.68 | |

With respect to the EPIC Card, the Court has compiled the following chart from the attached invoices:

4

| OUTSTANDING EPIC CARD - COUNT II | | | | | |
|---|---|---|---|---|---|
| PURCHASE DATE | STATEMENT DATE | CARD NO. | INVOICE # | AMOUNT | ECF |
| 9/16/2024 | 9/17/2024 | *0036 | 455013-15415482 | $23,775.06 | 1-9 AT 2 |
| 8/21/2024 | 8/26/2024 | *0226 | 454394-15355291 | $3,110.03 | 1-9 AT 3 |
| 8/21/2024 | 8/26/2024 | *0234 | 454396-15355292 | $5,758.59 | 1-9 AT 4 |
| 8/21/2024 | 8/26/2024 | *0036 | 454397-15355293 | $9,862.51 | 1-9 AT 5 |
| 8/21/2024 | 8/26/2024 | *0036 | 454401-15355295 | $5,422.44 | 1-9 AT 6 |
| 8/21/2024 | 8/26/2024 | *0036 | 454403-15355297 | $5,392.02 | 1-9 AT 7 |
| 8/22/2024 | 8/26/2024 | *0036 | 454413-15355306 | $5,326.64 | 1-9 AT 8 |
| 8/27/2024 | 8/28/2024 | *0234 | 454548-15367272 | $3,959.12 | 1-9 AT 9 |
| 8/29/2024 | 8/30/2024 | *0275 | 45604-15372780 | $1,876.72 | 1-9 AT 10 |
| 8/31/2024 | 9/2/2024 | *0234 | 454626-15376114 | $3,941.64 | 1-9 AT 11 |
| 9/1/2024 | 9/2/2024 | *0234 | 45648-15380441 | $3,369.72 | 1-9 AT 12 |
| 9/3/2024 | 9/4/2024 | *0234 | 45691-15385551 | $2,882.75 | 1-9 AT 13 |
| 9/4/2024 | 9/5/2024 | *0226 | 454717-15388116 | $6,177.80 | 1-9 AT 14 |
| 9/4/2024 | 9/5/2024 | *0234 | 454718-15388117 | $2,699.69 | 1-9 AT 15 |
| 9/5/2024 | 9/6/2024 | *0234 | 454727-15390020 | $4,578.59 | 1-9 AT 16 |
| 9/8/2024 | 9/9/2024 | *0234 | 45788-15396983 | $4,123.40 | 1-9 AT 17 |
| 9/9/2024 | 9/10/2024 | *0234 | 454810-15399478 | $3,568.32 | 1-9 AT 18 |
| 9/14/2024 | 9/16/2024 | *0234 | 454949-15410963 | $3,388.00 | 1-9 AT 19 |
| 9/14/2024 | 9/16/2024 | *0234 | 454960-15410965 | $543.48 | 1-9 AT 20 |
| 9/16/2024 | 9/17/2024 | *0424 | 455016-15415484 | $4,841.76 | 1-9 AT 21 |
| 9/17/2024 | 9/18/2024 | *0234 | 455023-15418330 | $4,474.31 | 1-9 AT 22 |
| 9/18/2024 | 9/19/2024 | *0226 | 455039-15420038 | $4,012.71 | 1-9 AT 23 |
| 9/19/2024 | 9/20/2024 | *0226 | 455076-15422299 | $6,640.88 | 1-9 AT 24 |
| 9/23/2024 | 9/24/2024 | *0234 | 455174-15431627 | $3,961.40 | 1-9 AT 25 |
| 9/25/2024 | 9/26/2024 | *0234 | 455235-15436589 | $3,976.89 | 1-9 AT 26 |
| 9/25/2025 | 9/26/2024 | *0234 | 455236-15436590 | $2,738.77 | 1-9 AT 27 |
| 9/26/2024 | 9/27/2024 | *0234 | 455244-15437453 | $4,329.42 | 1-9 AT 28 |
| 9/26/2024 | 9/27/2024 | *0226 | 455249-15437458 | $4,339.30 | 1-9 AT 29 |
| 9/26/2024 | 9/27/2024 | *0226 | 455250-15437459 | $5,215.55 | 1-9 AT 30 |
| 9/27/2024 | 9/30/2024 | *0226 | 455262-15440417 | $5,869.02 | 1-9 AT 31 |
| 9/30/2024 | 10/1/2024 | *0424 | 455310-15445353 | $5,952.76 | 1-9 AT 32 |
| 10/1/2024 | 10/3/2024 | *0234 | 455326-15449228 | $5,342.37 | 1-9 AT 33 |
| 10/3/2024 | 10/4/2024 | *0234 | 455360-15453267 | $4,652.83 | 1-9 AT 34 |
| 10/3/2024 | 10/4/2024 | *0234 | 455366-15453272 | $4,210.06 | 1-9 AT 35 |
| 10/3/2024 | 10/4/2024 | *0226 | 455367-15453273 | $4,947.01 | 1-9 AT 36 |
| 10/5/2024 | 10/7/2024 | *0226 | 455405-15455882 | $4,947.01 | 1-9 AT 37 |
| 10/11/2024 | 10/14/2025 | *0234 | 455554-15470162 | $2,205.60 | 1-9 AT 38 |
| 10/14/2024 | 10/16/2024 | *0234 | 455611-15478196 | $3,835.63 | 1-9 AT 39 |
| 10/17/2024 | 10/18/2024 | *0226 | 455663-15480628 | $2,735.28 | 1-9 AT 40 |
| 10/17/2024 | 10/18/2024 | *0226 | 455665-15480629 | $5,443.61 | 1-9 AT 41 |
| 10/17/2024 | 10/18/2024 | *0226 | 455666-15480630 | $5,949.21 | 1-9 AT 42 |
| 10/17/2024 | 10/18/2024 | *0226 | 455667-15480631 | $5,950.86 | 1-9 AT 43 |
| 10/17/2024 | 10/18/2024 | *0226 | 455668-15480632 | $5,604.46 | 1-9 AT 44 |
| 10/17/2024 | 10/18/2024 | *0234 | 455673-15480638 | $2,943.97 | 1-9 AT 45 |
| OUTSTANDING AMOUNTS | | | | $214,877.19 | |
| Aug 24 Finance charge | 8/31/2024 | | FCHRG000000017697 | $974.86 | 1-9 AT 46 |
| Sep 24 Finance charge | 9/30/2024 | | FCHRG000000017750 | $1,778.16 | 1-9 AT 47 |
| Oct 24 Finance charge | 10/31/2024 | | FCHRG000000017851 | $1,595.74 | 1-9 AT 48 |
| Nov 24 Finance charge | 11/30/2024 | | FCHRG000000017913 | $2,144.34 | 1-9 AT 49 |
| Dec 24 Finance charge | 12/31/2024 | | FCHRG000000017962 | $2,175.90 | 1-9 AT 50 |
| Jan 25 Finance charge | 1/31/2025 | | FCHRG000000018004 | $2,175.90 | 1-9 AT 51 |
| OUTSTANDING FINANCE CHARGES | | | | $10,844.90 | |
| TOTAL | | | | $225,722.09 | |

(Pl. Ex. 9). Plaintiffs' Complaint does not include invoices for finance charges assessed in February, March or April, 2025. (*See* Docket No. 1).

B. *Procedural History*

Plaintiffs initiated this action by filing their Complaint against Defendant on April 22, 2025. (Docket No. 1). They then paid $100 to have Allegheny County Deputy Sheriff Calvin Cygrymus serve the Complaint and Summons on Corporate Air LLC and service was effectuated on April 28, 2025 by providing it to the person in charge of the business at 15 Allegheny County Airport in West Mifflin, PA, i.e., flight attendant Susan Pernice. (Docket Nos. 4, 5). Proof of

service was filed on CM/ECF on April 29 and May 5, 2025. (Docket Nos. 4, 5). Defendant did not timely answer the Complaint within 21 days or by May 19, 2025, as required by the Federal Rules of Civil Procedure and as is expressly stated on the Summons form. (*Id.*).

On May 20, 2025, Plaintiffs requested that the Clerk of Court enter default against Defendant after it failed to plead or otherwise respond to the Complaint. (Docket No. 6). Later that same day, the Clerk issued an entry of default. (Docket No. 7). On May 22, 2025, Plaintiffs filed a motion for default judgment, including an award of attorneys' fees and costs as part of default judgment, a declaration by lead counsel Joseph F. Butcher, Esq., a proposed Order, and a brief in support. (Docket Nos. 11; 12). The Court ordered the Plaintiffs to serve Defendant with the Court's Order and directed Defendants to file a response by June 6, 2025. (Docket No. 13). Thereafter, Plaintiffs submitted a Notice and Proof of Service of May 30, 2025 Order of Court, indicating that the Order was served on Defendant via U.S. Mail, First Class postage prepaid at its address of record. (Docket No. 14). Defendant has not filed a response as of the date of this Memorandum Opinion and Order.

### C.  *Attorney's Fees and Costs and Additional Interest*

In Plaintiffs' accompanying fee petition, Attorney Butcher declares that Plaintiffs have been represented by three attorneys from Zimmer Kunz PLLC, including him, shareholder Ryan Zeli, Esq. and associate Kyzen Smith, Esq. (Docket No. 11-1). Attorney Butcher states that the hourly rates of $300 claimed for the shareholder fees and $225 for the associate fees are "customary billing rates for these attorneys," "commensurate with [their] respective levels of experience and credentials at the time the services were performed," and that the hourly rates are "fair and reasonable" when compared to hourly rates charged by "other attorneys of similar practice areas and tenure" in this area. (Docket No. 11-1 at ¶¶ 4-6).

The fee petition includes timesheets detailing the services performed by each attorney and the costs incurred by the firm during the representation from March 26, 2025 and the filing of the motion for default judgment on May 22, 2025. (Docket No. 11-1 at 4-12). Specifically, Plaintiffs seek the following:

**PROFESSIONAL SERVICES SUMMARY**

| Attorney | | Hours | Rate | Amount |
|---|---|---|---|---|
| JFB | Butcher, Joseph F | 34.20 | $300.00 | $10,260.00 |
| RAZ | Zeli, Ryan A | 0.40 | $300.00 | $120.00 |
| KDS | Smith, Kyzen D | 44.10 | $225.00 | $9,922.50 |

**EXPENSE SUMMARY**

| Code | Description | Amount |
|---|---|---|
| 53 | COURIER SERVICE | 100.00 |
| 65 | FILING FEE | 405.00 |

| | |
|---|---|
| Total Fees & Disbursements | $20,807.50 |
| Previous balance | $0.00 |
| Balance due upon receipt | $20,807.50 |

(Docket No. 11-1 at 12).

As to additional interest on the outstanding invoices, Attorney Butcher declares that the interest due on the three accounts for the 31-day period from the date the Complaint was filed April 22, 2025 through the date of the motion, May 22, 2025, includes the following:

1. $7,982.95 in interest (at 18%) on the outstanding balances for the Fuel Purchase Agreement;

2. $2,157.13 in interest (at 12%) on the outstanding balance for the EPIC Card Account; and,

3. $600.41 in interest (at 12%) on the outstanding balance for the Signature Account.

(Docket No. 11-1 at ¶¶ 7-12). Plaintiffs assert that they will provide updated information concerning attorney's fees and costs in a supplemental motion, if a hearing is deemed necessary in this matter and/or additional fees and costs are incurred. (Docket No. 12).

III. LEGAL STANDARDS

Federal Rule of Civil Procedure 55(a) provides, "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). If a plaintiff seeks relief other than a "sum certain" in damages, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b). That is what has occurred here, as Plaintiffs have filed a motion seeking a default judgment including the sums certain set forth in the Complaint as well as additional interest, attorneys' fees and costs.

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984); *see also Thornton v. West*, 529 F. App'x 107, 110 (3d Cir. June 17, 2013). Upon the Clerk's entry of default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990); *Murphy v. Ability Recovery Servs., LLC*, 2019 WL 7708592, at *1 (W.D. Pa. Aug. 7, 2019). That said, "the Court need not accept the moving party's legal conclusions[.]" *Bower v. NRA Grp., LLC*, 2019 WL 3306515, at *2 (W.D. Pa. July 22, 2019) (internal quotation marks and citation omitted). Therefore, "the Court must decide whether the unchallenged facts constitute a legitimate cause of action," before entering a default judgment against the defendant. *Murphy*, 2019 WL 7708592, at *1 (internal quotation marks and citation omitted). Once the Court determines that the plaintiff has plausibly alleged a valid cause of action, the Court must consider three factors when deciding whether to grant default judgment: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

Under Federal Rule of Civil Procedure 55, the Court "may conduct hearings" when it needs to "determine the amount of damages" to enter or effectuate a default judgment. Fed. R. Civ. P. 55(b)(2)(B). "Rule 55(b)(2)'s language regarding hearings is permissive." Joe Hand Promotions, Inc. v. Yakubets, 3 F. Supp. 3d 261, 271 (E.D. Pa. 2014). As numerous courts have held, if the Court can determine the amount of damages to be awarded based on affidavits or other evidentiary materials, "[t]he Court is under no requirement to conduct an evidentiary hearing with testimony." E. Elec. Corp. of N.J. v. Shoemaker Constr. Co., 657 F. Supp. 2d 545, 552 (E.D. Pa. 2009); see Rainey v. Diamond State Port Corp., 354 Fed. App'x. 722, 724 (3d Cir. 2009) ("If it is necessary to determine the amount of damages or to establish the truth of any averment by evidence, the court *may* conduct a hearing.") (emphasis added and internal quotation marks and citation omitted). The Court, in its discretion, does not believe that a hearing is warranted to resolve this matter.

IV. DISCUSSION

  A. Liability

The Court initially turns to the first step in the default judgment analysis, i.e., whether "the unchallenged facts" put forward by the Plaintiffs "constitute a legitimate cause of action." Murphy, 2019 WL 7708592, at *1 (internal quotation marks and citation omitted). Here, the unchallenged facts certainly put forth legitimate causes of action at Counts I and II for breach of contract against Defendant arising from its breach of the Fuel Purchase Agreement and the terms of the agreements for the EPIC Card and Signature Card accounts.[1]  (*See* Docket No. 1).

---

[1] As Plaintiffs have conceded that no further relief is sought for their alternative theories of unjust enrichment/promissory estoppel at Counts III and IV, such claims will be dismissed, without prejudice and no further discussion of such claims is necessary. (*See* Docket No. 11 at ¶ 23).

9

The parties agreed that Oregon law governs their contractual relationships and Oregon law will be applied to analyze the agreements. *See Kruzits v. Okuma Mach. Tool*, 40 F.3d 52, 55 (3d Cir. 1994) ("In determining the appropriate choice of law, this Court applies Pennsylvania's choice-of-law rules. Under Pennsylvania law, 'courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them.'"). It is well established that "[t]o maintain a claim for breach of contract under Oregon law, a party must 'allege the existence of a contract, its relevant terms, plaintiff's full performance and lack [of] breach, and defendant's breach resulting in damage to plaintiff.'" *Farmer v. Thar Process, Inc.*, 705 F. Supp. 3d 1218, 1226 (D. Or. 2023) (quoting *Slover v. Oregon Bd. of Clinical Social Workers*, 144 Or. App. 565, 570, 927 P.2d 1098 (1996)) (internal quotation marks and citations omitted). Oregon law also permits the recovery of attorneys' fees and costs in proceedings to enforce a contract where such relief is specified in the contract. *See* Or. Rev. Stat. Ann. § 20.096(1) ("(1) In any action or suit in which a claim is made based on a contract that specifically provides that attorney fees and costs incurred to enforce the provisions of the contract shall be awarded to one of the parties, the party that prevails on the claim shall be entitled to reasonable attorney fees in addition to costs and disbursements, without regard to whether the prevailing party is the party specified in the contract and without regard to whether the prevailing party is a party to the contract.").

With respect to Count I, Signature has sufficiently alleged that it met all of its obligations under the Fuel Purchase Agreement, as amended, that Defendant breached the agreement by failing to pay the outstanding invoices for aviation fuel purchases attached to the Complaint, and that it has been damaged by the Defendant's ongoing failure to pay the invoices. (*See* Docket No. 1 at ¶¶ 26-32). This agreement also authorized the assignment to Signature and expressly permitted it

10

to charge interest and seek attorneys' fees and costs upon a default. (*See* Pl. Exs. 1; 2). Given same, Signature has plainly set forth a valid breach of contract claim at Count I. *See Farmer*, 705 F. Supp. 3d at 1226.

Similarly, as to Count II, SECS has averred that it met all of its obligations under the agreements for the EPIC Card and Signature Card, that Defendant breached those agreements by defaulting on the accounts, and that SECS has been damaged by its ongoing failure to pay the outstanding balances. (Docket No. 1 at ¶¶ 33-39). The assignment to SECS is expressly permitted under the agreements as are the recovery of attorney's fees and finance charges, including late fees and interest. (*See* Pl. Exs. 3-6).

Having determined that Plaintiffs have stated claims upon which relief can be granted for breach of these agreements, the Court next considers whether Defendant has any "litigable defenses," that would prevent entry of a default judgment against it. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

In this Court's estimation, it appears that there are no valid bases for Defendant to challenge jurisdiction or venue in this matter. To that end, the Court has subject matter jurisdiction over this dispute based on diversity of citizenship because Plaintiffs are citizens of Florida and Delaware while Defendant is a citizen of Pennsylvania such that the parties are completely diverse and the amount in controversy exceeds the statutory threshold of $75,000. *See* 28 U.S.C. § 1332(a)(1). The Court also has personal jurisdiction over Defendant because it was properly served with the Summons and Complaint by having a Deputy Sheriff provide same to the person in charge of Defendant's business operating at 15 Allegheny Airport, West Mifflin, PA on April 19, 2025, as is authorized under the Federal Rules of Civil Procedure and applicable Pennsylvania law. *See e.g.,* Fed. R. Civ. P. 4(h)(1)(A) (permitting service upon a corporation or other entity within a

11

judicial district in the manner prescribed in 4(e)(1)); Fed. R. Civ. P. 4(e)(1) (permitting service upon by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made"); Pa. R. Civ. P. 424(2) ("Service of original process upon a corporation or similar entity shall be made by handing a copy to any of the following persons provided the person served is not a plaintiff in the action […] (2) the manager, clerk or other person for the time being in charge of any regular place of business or activity of the corporation or similar entity."). Venue is also proper in this Court as the breach of the agreements occurred within the Western District of Pennsylvania. 28 U.S.C. § 1391(b)(2).

All told, and after careful consideration, it does not appear that Defendant has any litigable defenses that would prevent the entry of default judgment against it. *See e.g.*, *Murphy*, 2019 WL7708592, at *3 (declaring that the defendant "appears to have been properly served, subject matter jurisdiction is present, and venue is appropriate" and concluding that no litigable defenses exist).

The Court next considers whether Plaintiffs would suffer prejudice if the Court did not enter a default judgment against Defendant. *Chamberlain*, 210 F.3d at 164. "A plaintiff will be prejudiced absent a default judgment where, due to the defendant's continued failure to respond to plaintiff's claims, the plaintiff is left with no other recourse." *Cyprus Mines Corp. v. M & R Indus., Inc.*, 2015 WL 1469529, *8 (D.N.J. Mar. 30, 2015). Before the initiation of the instant action, Defendant was provided with the invoices for the outstanding charges on the accounts, Plaintiffs notified Defendant of the default on January 31, 2025, and Defendant has failed to pay its obligations, amounting to several hundred thousand dollars due and owing. (Docket No. 1 at ¶¶ 13-25). Moreover, despite being served, Defendant has refused to answer the Plaintiffs' Complaint

or otherwise participate in this action. (*See* Docket Report Civ. A. No. 25-540). Accordingly, the Court finds that Plaintiffs would suffer prejudice if the Court did not enter default judgment against Defendant. *See, e.g.*, *Murphy*, 2019 WL7708592, at *3, at *3.

At the next step in the default judgment analysis, the Court must consider whether Defendant's "delay is due to culpable conduct." *Chamberlain*, 210 F.3d at 164. Again, this is an action to collect on debts which have been outstanding for several months prior to Plaintiffs alerting Defendant of the default on January 31, 2025, and the debts remain outstanding despite Plaintiffs instituting this lawsuit on April 22, 2025, and later moving for a default judgment. (*See* Docket No. 1). Plaintiffs were forced to engage counsel in an ongoing effort to collect these debts while Defendant has effectively ignored its financial obligations, demonstrating its culpable conduct. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1183 (3d Cir. 1984). As such, the Court finds that Plaintiffs have sufficiently established that they are entitled to a default judgment as to Counts I and II.

    B.  *Damages*

The Court continues with its evaluation of the Plaintiffs' request for damages as part of the default judgment including breach of contract damages and interest/fees set forth in the Complaint as well as additional interest since the filing of the Complaint and attorney's fees and costs for bringing and prosecuting this action to date. (*See* Docket Nos. 11; 12). Federal Rule of Civil Procedure 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Thus, the Court must examine the damages requested in the motion for default judgment with respect to each Count to ensure that it does not exceed that requested in the Complaint.

    1.  Count I

As to Defendant's breach of the Fuel Purchase Agreement at Count I, Signature demanded $522,182.10 in principal and $46,601.87 in interest through the date of the filing of the Complaint, April 22, 2025, ongoing contractual interest, post-judgment interest and attorney's fees. (Docket No. 1 at ¶¶ 28-29). Counsel avers that the amount of interest accruing at 18% annually, from the filing of the Complaint on April 22, 2025 and the next 31 days through the date of its Motion, May 22, 2025, included an additional $7,982.95 in interest. (Docket No. 11-1 at ¶ 8).

The Court has determined that the principal amount set forth in the Complaint is the same amount as the outstanding balances on the submitted invoices (as is noted in the above chart) and that the interest was properly computed in both the Complaint and the declaration of counsel. (*See e.g.*, Docket No. 1 at ¶¶ 28-29; Pl. Ex. 7; p.3, *supra*). As those amounts are sufficiently supported by invoices and straightforward computations of interest, the Court will include them in the default judgment. For reasons explained below, the Court will also grant Signature's request that half of the attorneys' fees and costs claimed be awarded to it in an amount of $10,151.25. *See* § V.B.3, *infra*. In sum, the Court will award Signature damages of $587,170.67 at Count I, delineated as follows:

| COUNT I | |
|---|---|
| Principal | $522,182.10 |
| Interest | $54,584.82 |
| 1/2 Attorney Fees | $10,151.25 |
| 1/2 Costs | $252.50 |
| TOTAL | $587,170.67 |

2. Count 2

Moving on, as to Defendant's breach of the agreements for the EPIC Card and Signature Card accounts at Count II, the amounts that SECS demanded in its Complaint for outstanding balances and finance charges on both accounts consist of single figures that are not broken down

between outstanding balances/finance charges and exceed the amounts which the Court has computed from the invoices attached to the Complaint, as is noted below:

| COUNT II - EPIC | | | COUNT II - SIGNATURE | | |
|---|---|---|---|---|---|
| Complaint | 230,872.39 | | Complaint | $64,838.11 | |
| Invoices - Outstanding Balance | | 214,877.19 | Invoices - Outstanding Balance | | $50,446.78 |
| Invoices - Finance Charges | | 10,844.90 | Invoices - Finance Charges | | $3,595.90 |
| Invoices - Total | | 225,722.09 | Invoices - Total | | $54,042.68 |

(*See* Docket No. 1 at ¶¶ 37-39; Pl. Exs. 8, 9; p. 4-5, *supra*). The Court will include the amounts supported by the invoices attached to the Complaint in the default judgment. *See Comdyne I, Inc., 908 F.2d at 1149* (Court does not take facts related to damages as true for purposes of default judgment). In his declaration, Attorney Butcher avers that the finance charge (interest accruing at 12% annually), for the 31 days from the filing of the Complaint on April 22, 2025 through the date of Plaintiffs' Motion, May 22, 2025, included an additional $600.41 on the Signature Card and $2,175.90 on the Epic Card. (Docket No. 11-1 at ¶¶ 9-12). While SECS did not include invoices for the finance charges assessed in February, March, April, and May of 2025, the Court can compute the daily rate for each account and determines that the total finance charges for the 111-day period from February 1, 2025 through May 22, 2025 are $2,149.86 for the Signature Card and $7,791.126 for the EPIC Card. Hence, the amounts in the following chart will be included in the default judgment:

| COUNT II - EPIC | | COUNT II - SIGNATURE | |
|---|---|---|---|
| Invoices - Outstanding Balance | 214,877.19 | Invoices - Outstanding Balance | $50,446.78 |
| Invoices - Finance Charges | 10,844.90 | Invoices - Finance Charges | $3,595.90 |
| Additional Finance Charges | 7,791.13 | Additional Finance Charges | $2,149.86 |
| Invoices - Total | 233,513.22 | Invoices - Total | $56,192.54 |
| Grand Total Count II | $289,705.76 | | |

For reasons explained in the next section of this Memorandum Opinion, the Court will also grant SECS' request that half of the attorneys' fees and costs claimed be awarded to it in an amount of

15

$10,151.25. *See* § V.B.3, *infra*. Altogether, the Court will award SECS damages at Count II of $300,109.51, as follows:

| COUNT II - TOTAL | |
|---|---|
| EPIC | $233,513.22 |
| SIGNATURE | $56,192.54 |
| 1/2 Attorney Fees | $10,151.25 |
| 1/2 Costs | $252.50 |
| Total | $300,109.51 |

    3. Attorneys' Fees and Costs

Plaintiffs seek a total of $20,870.50 in attorney's fees and $505 in costs and ask that the fees and costs be equally apportioned between the default judgments for Signature and SECS. (Docket Nos. 11; 12). The Court finds that the costs are appropriately claimed and will likewise grant the request to apportion the award between the Plaintiffs. *See* Fed. R. Civ. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party."). With respect to their request for attorneys' fees, as noted above, all three agreements authorize Plaintiffs to recover attorneys' fees in this type of enforcement action and the same is consistent with Oregon law. (Pl. Ex. 1 at 7; Pl. Ex. 4 at 2; Pl. Ex. 6 at 3). However, some additional analysis is required as the Court is tasked with evaluating the reasonableness of the attorneys' fees claimed.

Courts in the Third Circuit assess requests for attorneys' fees using the lodestar method. *In re: S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 773 (3d Cir. 2019). Under the lodestar method, a court determines the reasonable fee "by multiplying the number of hours . . . reasonably worked on a client's case by a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided, and the experience of the lawyer." *Id.* An attorney's reasonable hourly rate is "the prevailing rate[] in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Clemens*

16

*v. New York Cen. Mut. Fire Ins. Co.*, 903 F.3d 396, 402 (3d Cir. 2018). An attorney's hourly rate "is normally addressed by submitting affidavits of other attorneys in the relevant legal community attesting to the range of prevailing rates charged by attorneys with similar skill and experience." *See, e.g.*, *Bd. of Tr. of Greater Pa. Carpenter's Med. Plan v. Schwartzmiller*, 2021 WL 679988, at *15 (W.D. Pa. Feb. 22, 2021) (Fischer, J.). That said, courts have relied on other probative evidence of an attorney's hourly rate aside from affidavits. *See Napold v. Parvatishver, LLC*, 2018 WL 1089680, at *7 (W.D. Pa. Feb. 28, 2018) (Fischer, J.) (finding that an hourly rate was reasonable by examining the attorney-fee awards in other cases in the Western District of Pennsylvania).

In the fee petition, Plaintiffs seek a total of $20,870.50 in attorney's fees for the 78.4 hours of work performed by Zimmer Kunz PLLC, and request hourly rates of $300 for shareholders Butcher and Zeli and $225 for associate Smith. (Docket Nos. 11; 11-1; 12). Attorney Butcher avers that the hourly rates are those customarily charged by these attorneys for services rendered to their clients. (Docket No. 11-1 at ¶ 4). The Court also agrees with Attorney Butcher's opinion that the hourly rates are reasonable and consistent with the fees charged by other attorneys with similar levels of experience in the Pittsburgh legal market. (Docket No. 11-1 at ¶ 6). To that end, both shareholders involved in this action have significant experience as Butcher was admitted to the Pennsylvania Bar in 2000 and has 24 years of experience while Zeli was admitted in 2006 and has 18 years of experience. Associate attorney Smith was admitted in 2000 and has five years of experience. This Court has approved similar hourly rates for lawyers with equivalent experience levels. *See e.g., Pletcher et al. v. Giant Eagle, et al.*, Civ. A. No. 20-754, Docket Nos. 112, 114 (W.D. Pa. Nov. 16, 2021) (adopting Report and Recommendation of Special Master finding that hourly rate of $350 for attorney with 15 years of experience was reasonable for defending ADA

case); *Board of Trustees of OPCMIA Local 526 Combined Funds, Inc. v. Spartan Construction Services, Inc. et al.*, Civ. A. No. 24-1406, Docket No. 22 (W.D. Pa. May 29, 2025) (approving fee petition for ERISA default judgment action and approving hourly rate of $250 for attorney with 5 years of experience). Thus, the Court holds that the instant hourly rates are reasonable.

When it comes to examining whether the number of hours expended by an attorney is reasonable, a "court may not reduce an award *sua sponte*; rather, it can only do so in response to specific objections made by the opposing party." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 711 (3d Cir. 2005). In the default judgment context, courts have held that the lack of objection by a party means that the court cannot reduce the number of hours expended as unreasonable. *See, e.g.*, *Arku-Nyadia v. Legal Sea Foods, LLC*, 2022 WL 958465, at *8 (D.N.J. Mar. 29, 2022) ("The Court is mindful in determining the reasonableness of the time spent by counsel that the defaulted defendant did not oppose this motion and that the Court thus may not 'reduce counsel fees *sua sponte* as excessive, redundant, or otherwise unnecessary in the absence of a sufficiently specific objection.'") (citation omitted). Having carefully considered the detailed time sheets submitted by Plaintiffs' counsel, it is the Court's view that they demonstrate that the hours expended by the attorneys from Zimmer Kunz were reasonably undertaken in pursuing this matter from the initial investigation through the motion for default judgment and that the services rendered were appropriately assigned based on the individual attorneys' relative levels of experience. (Docket No. 11-1 at 4-12). In sum, the Court finds that, under the lodestar method, the rates and hours claimed for this case are reasonable, and the Court will award the requested $20,870.50 in attorney's fees. *See S.S. Body Armor*, 927 F. 3d at 773.

V. CONCLUSION

Based on the foregoing, Plaintiffs' Motion for Default Judgment [11] is granted, in part and denied, in part. An appropriate Order follows.

                                                *s/Nora Barry Fischer*
                                                Nora Barry Fischer
                                                Senior U.S. District Judge

Date: July 10, 2025

cc/ecf: All counsel of record.